OWENS-ILLINOIS, INC., Plaintiff-Appellant, *v.* WILLIAM M. BOWLING, Director, Department of Labor, *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-1471

Opinion filed August 28, 1981.—Supplemental opinion filed on denial of rehearing December 8, 1981.°

---

° A supplemental opinion was filed on denial of rehearing. That opinion is found at 99 Ill. App. 3d 1148.

1118

John A. Relias and Michael W. Duffee, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Joseph D. Keenan, III, Assistant Attorney General, of counsel), for appellee William M. Bowling.

Irving M. Friedman and Michael B. Erp, both of Katz, Friedman, Schur & Eagle, of Chicago, for appellees Locals 24, 40, 95 and 135 of the Glass Bottle Blowers Association and Local 109 of the American Flint Glass Workers Union.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff seeks administrative review (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*) of three related decisions by the Director of the Illinois Department of Labor which awarded unemployment insurance benefits to certain of plaintiffs' employees under the Unemployment Insurance Act (the Act) (Ill. Rev. Stat. 1977, ch. 48, par. 300 *et seq.*). The issues presented by plaintiff on appeal are whether (1) the trial court erred (a) in

denying plaintiff's motion to maintain the action as a class action and (b) in allowing certain evidence to be added to the record; (2) the Director of Labor (Director) (a) improperly refused to determine the eligibility of plaintiff's employees under the Act and (b) improperly determined that they were not involved in a labor dispute and thus were not ineligible for benefits.

The facts of this case are largely undisputed. In 1977, plaintiff was negotiating the terms of a new nationwide collective-bargaining agreement with representatives of the American Flint Glass Workers Union (AFGWU) which, through its various locals, represented certain skilled glass mold-making employees at several of plaintiff's plants. To strengthen its bargaining position, the AFGWU engaged in a nationwide economic strike against plaintiff, which took place between September 16, 1977, and October 15, 1977. Many of plaintiff's employees at its Illinois facilities—in particular Alton Plant No. 7, Alton Mold Manufacturing Plant, and the Streator plant—became involved in the strike. The AFGWU strike directly involved a relatively small number of plaintiff's employees, but many non-AFGWU employees (hereinafter claimants) who comprised the majority of the total work force at the three plants declined to cross the AFGWU picket lines to come to work during the strike, and they filed claims for unemployment benefits with the Illinois Department of Labor, Division of Unemployment Insurance (Department).

Employees at Alton Plant No. 7 are represented by Local 123 of the AFGWU and by various locals of the Glass Bottle Blowers Association (GBBA). Local 123 represented approximately 25 employees at the time of the strike. Approximately 1,440 employees were represented by the GBBA locals which were parties to collective-bargaining agreements in effect at the time and containing no-strike clauses for the contract term. When the AFGWU strike began, nearly all of the GBBA employees refused to cross picket lines for the duration of the strike, and they filed claims for unemployment benefits with the Department. Although there was work for those employees at the time, their absence forced plaintiff to almost completely cease operations at the plant. Moreover, plaintiff's officials repeatedly informed the presidents of the various GBBA locals, both before and during the strike, that work was available for their members and that they should report to the plant in accordance with their contractual obligations. The GBBA did not order their men to cross picket lines but told them it was a matter of personal choice for each employee. While no employee took part in the picketing, they continued to respect the AFGWU lines.

At the Alton Mold Manufacturing Plant, which is adjacent to but an entirely separate operation from Alton Plant No. 7, Local 43, AFGWU,

represented some 385 employees, and Local 109, AFGWU, represented another 90 workers. Also at that plant, approximately 70 employees were members of Local 7432, United Steel Workers of America, which was party to a collective-bargaining agreement with plaintiff containing a no-strike clause in effect during the strike. Local 109 also had a collective-bargaining agreement with plaintiff containing a similar no-strike provision. The contract between Local 109 and plaintiff had expired by its terms on August 31, 1977, but in accordance with long-standing practice, Local 109, which was not included in the nationwide negotiations, extended its contract until after conclusion of the Local 43 contract. When the strike by Local 43 commenced, members of Local 7432 and Local 109 refused to cross picket lines established jointly by Locals 43 and 123 at the two Alton facilities. They also refrained from picketing and remained unemployed during the strike although they and their union leadership were repeatedly informed by plaintiff before and during the strike that work was available and that they should report to the plant. The unions permitted each employee to make that decision independently. Those non-AFGWU employees also filed claims for unemployment insurance with the Department.

At plaintiff's Streator plant, Local 85, AFGWU, represented some 50 employees. Local 3, GBBA, represented approximately 225 employees, and Local 140, GBBA, represented about 1,700 employees. At the time in question, employees of Locals 3 and 140 worked under collective-bargaining agreements containing no-strike provisions for the life of the agreement. When the strike commenced, employees of both GBBA locals initially refused to cross picket lines, although they were told before and during the strike that the plant would continue to operate and work would be available. The presidents of both locals informed their respective memberships of their contractual obligations to return to work, but most of the GBBA employees failed to do so and filed claims for unemployment compensation. However, by October 1, 1977, two weeks after the strike began, from 400 to 600 GBBA employees did return.

A Department claims adjudicator ruled with respect to claimants at each of plaintiff's facilities that they were "not ineligible" for unemployment insurance benefits under section 604 of the Act. (Ill. Rev. Stat. 1977, ch. 48, par. 434.) No evidence was found that claimants were directly interested or otherwise involved in the AFGWU's labor dispute with plaintiff, but no specific findings were made of claimants' eligibility under section 500(C) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 420(C)).

Separate appeals from each ruling were taken before the Director's representative. At the hearing concerning claimants at the Alton Plant No. 7, four GBBA representatives testified that during the strike they filed unemployment benefits claims and, with one exception, had not actively

sought substitute work during the strike. There was also testimony that the Department's policy concerning the eligibility requirements of section 500(C) is not to require persons unemployed due to a labor dispute to actively seek work as a condition of eligibility. Similarly, at the hearing for the Alton Mold Manufacturing Plant, union representatives for Local 7432 and Local 109 appeared on behalf of their respective union memberships. The Director's representative granted plaintiff's request to take formal notice that it was the Department's policy not to make findings of claimant eligibility under section 500(C) in cases involving labor disputes. The only claimant to testify stated that he had made no formal applications for work while receiving unemployment benefits and that he had only made general inquiries about work at the unemployment office and from friends and neighbors. Finally, at the hearing for the Streator plant, the representatives for Local 3 gave the only testimony concerning substitute work. He stated that he had looked for work during the strike on two occasions prior to receiving unemployment benefits. Also, formal notice was taken at the hearing as to the Department's policy not to make individual determinations of eligibility under section 500(C) in labor dispute cases.

On March 9, 1979, the Director's representative issued recommended decisions on plaintiff's three appeals. The reasoning and conclusions concerning Alton Plant No. 7 were incorporated by reference in the decisions on the other two plants. The representative found, first of all, that with respect to the 500(C) issue, those claimants who testified at the hearings had not actively sought work, and he stated that the Department's policy in labor dispute cases is not to make findings of eligibility under section 500(C). Secondly, the representative rejected plaintiff's contention that a determination of eligibility had not been made, stating that such determination was "inherent in the actual payment of benefits." In addition, he found that in any event plaintiff had failed to perfect its appeal on the issue of "actively seeking work" under section 500(C), since it failed to file the appropriate "Notice of Possible Ineligibility" within the time limits of the Department's Regulation 14. On the issue of ineligibility under section 604 of the Act, the representative found that claimants were unemployed because of their unwillingness to cross picket lines; that the question of violence on such lines had no effect on eligibility; and that work was available for claimants at plaintiff's plants. Nevertheless, it was held that absent evidence that claimants had participated in, financed, or been directly interested in the AFGWU dispute, they could not be ruled ineligible for benefits solely because of their refusal to cross picket lines.

Following the filing of objections by plaintiff to the recommended decisions, the Director adopted those decisions and held that claimants were not ineligible for unemployment benefits during the strike. Plaintiff

then filed a three-count complaint for administrative review in the circuit court, naming as defendants the Director, the representative, and the various union officials who had appeared at the hearings. Thereafter, the court denied plaintiff's motion to certify three classes of defendants under section 57.3(a) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57.3(a)). Those classes included the claimants at the three facilities in question. Named as class representatives were the officials of the various unions who represented claimants for collective-bargaining purposes and who represented claimants at the hearings. Plaintiff, with leave of court, filed an amended complaint joining all of the claimants, and a motion to dismiss it was denied.

The court then ruled that plaintiff was barred from raising the issue of claimants' eligibility under section 500(C) because it had not complied with Regulation 14, noting that plaintiff should have filed a "Notice of Possible Ineligibility," which the court determined included the ground of "actively seeking work." Finally, concerning the section 604 issue, the court found that the record supported the Director's decisions that claimants had not participated in a labor dispute, stating that under section 604 an individual's failure to cross a picket line is not of itself determinative of such participation.

Opinion

We first turn our attention to the question of eligibility under section 500(C) of the Act, which provides in relevant part:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the Director finds that:

* * *

C. He is able to work, and is available for work; provided that during the period in question he was actively seeking work." (Ill. Rev. Stat. 1977, ch. 48, par. 420(C).)

Plaintiff maintains that section 500(C) sets forth distinct requirements for eligibility (in contrast to ineligibility under section 604) for unemployment benefits and that it was improper for the Department to consider whether claimants were ineligible under section 604 without determining their eligibility under section 500(C) by having actively sought work. Plaintiff further asserts that it is the Department's policy in labor dispute cases not to require that claimants register for work or comply with the requirement of section 500(C) that they actively sought work while unemployed. Defendants contend, on the other hand, that while eligibility under section 500(C) is determined on an individual basis, plaintiff did not properly contest that question due to its failure to comply with the filing requirements of Regulation 14.

Under Regulation 14(D), which sets forth the notice and report

requirements in labor dispute cases, the employer must file a "Notice of Labor Dispute" within 24 hours of the work stoppage and a "Report of Workers Affected by Labor Dispute" within five days of the date of unemployment. Regulation 14(D) further provides that to challenge the claimant's right to unemployment benefits for reasons other than a labor dispute, the employer must file a "Notice of Possible Ineligibility" (form Ben-22) or a letter in lieu thereof in accordance with Regulation 14 (B). The employer also is directed by form Ben-24 ("Report of Workers Affected by a Labor Dispute") to file a Ben-22 form for each worker if there is any reason other than the labor dispute for contesting the claimant's right to benefits. Furthermore, under Regulation 14(B) and as stated on the reverse side of form Ben-22, the employer must file the "Notice of Possible Ineligibility" within seven days of receiving the form "Notice to Last Employing Unit" or be precluded from appealing the claims adjudicator's decision of grounds other than those of section 604 of the Act.

Defendants do not argue that plaintiff failed to preserve its right to challenge the eligibility of claimants by virtue of its failure to timely file notice as required by Regulation 14, since the Director was unable to ascertain the exact date plaintiff was purportedly required to file such notice. Rather, defendants argue that plaintiff filed a Ben-24 form on September 19, 1977, by which plaintiff was also directed to file a "Notice of Possible Ineligibility" (Ben-22) in order to contest claimants' eligibility for reasons other than a labor dispute. Plaintiff filed no such notices for any of the approximately 2,800 claimants, and defendants argue, therefore, since plaintiff's appeal on October 12, 1977, from the claims adjudicator's section 604 determinations was the first time plaintiff raised the section 500(C) issue, it was untimely.

In view of the duties imposed on the Department by the Act and from the record before us, we cannot agree with defendants' position that they were not required to consider the 500(C) issue or that claimants' eligibility thereunder was in fact determined. The Department's duty to resolve questions of eligibility as to each claimant is set forth in section 702 of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 452), which provides in relevant part:

> "The claims adjudicator shall for each week with respect to which the claimant claims benefits * * * make a 'determination' which shall state whether or not the claimant is eligible for such benefits * * * and the sum to be paid the claimant with respect to such week. The claims adjudicator shall promptly notify the claimant and such employing unit as shall, within the time and in the manner prescribed by the Director, have filed a sufficient allegation that the claimant is ineligible to receive benefits * * *

for said week, of his 'determination' and the reasons therefor. In making his 'determination,' the claims adjudicator shall give consideration to the information, if any, contained in the employing unit's allegation, whether or not the allegation is sufficient."

■■ We read section 702 as requiring the claims adjudicator to make a specific finding of eligibility and the amount to be paid as to each claimant for each week that benefits are claimed. Additionally, should the employer challenge an employee's eligibility, the claims adjudicator is obligated to rule thereon and to notify both parties of his ruling. Although the Director can prescribe the manner of challenging eligibility, his authority to do so is not so broad as to wholly relieve the Department of that function. Only by purporting to see what is not there could one read section 702 as freeing the claims adjudicator from making the required determination as to each claimant.

Defendants maintain, however, that eligibility was implicitly determined under section 500(C). They point out that each claimant completed various forms upon application for unemployment benefits, and that on the Department's claim certification form each claimant is required to respond to the question of being "able" and "available" for work and of actively seeking work, as required by section 500(C). Defendants assert that absent the filing of contradictory charges by the employer through the timely filing of the Ben-22 form as prescribed by Regulation 14(B), benefits are awarded on the basis of the claim certification form, which they argue satisfies the eligibility test of section 500(C). In essence, they suggest that a 500(C) determination was made as to each claimant and that plaintiff waived its right to contest those determinations by its failure to follow the filing procedure of Regulation 14, and therefore that it was proper for the representative to refuse to address the 500(C) issue at the hearings.

We find defendants' position untenable both with respect to the conclusions drawn from the particular facts at hand and the general interpretation of the statutory scheme. In the representative's decisions, adopted in full by the Director, it was found that those claimants testifying at the hearings had not actively sought work during the strike even though work was available for them at plaintiff's facilities. Furthermore, there is no indication in the record that findings of eligibility were made as to each claimant. Neither are there copies of certification or other evidence indicating claimants' eligibility, as required for the record on appeal to the Director. Ill. Rev. Stat. 1977, ch. 48, par. 471.

In this regard, the Representative stated in the Alton Plant No. 7 decision:

"It is simply not true that a determination of eligibility was not made. If nowhere else, that determination can be found inherent in

the actual payment of benefits. Indeed, one begs the presence of the other and neither exists in the absence of the other."

Aside from that statement, defendants advert to nothing in the record indicating that eligibility was in fact determined as to any claimant. Moreover, we do not agree with the representative's conclusion that the payment of benefits necessarily implies the finding of eligibility, for that assertion does not exclude the possibility that payments were made simply upon the filing of claims, with nothing more than routine, mechanical processing. Indeed, defendants' conclusion is contradicted by the colloquy in the Streator plant case:

"MR. RELIAS [counsel for plaintiff]: I would also like you, Mr. Linderman, to take notice of the Department of Labor's policy [in] labor dispute cases which is not to make individual determinations of eligibility and to take [sic] unemployment compensation benefits without any determination on the 500 C, if indeed that is the policy.

MR. LINDERMAN [Director's representative]: Well, I am mindful of the fact that that's the way it is done.

MR. RELIAS: Fine.

MR. LINDERMAN: Right now there is no question of that."

This exchange suggests that no finding of eligibility is made for any employee either directly involved in or indirectly affected by a labor dispute.

■■ Uppermost in determining the validity of a regulation is whether it furthers the legislative intent as discerned from the statute. (*Commonwealth Edison Co. v. Pollution Control Board* (1974), 25 Ill. App. 3d 271, 323 N.E.2d 84, *modified* (1976), 62 Ill. 2d 494, 343 N.E.2d 459.) Administrative regulations, like statutes, are presumptively valid, and one who attacks a regulation bears the burden of establishing its invalidity. (*Midwest Petroleum Marketers Association v. City of Chicago* (1980), 82 Ill. App. 3d 494, 402 N.E.2d 709.) In case of conflict between a statute and regulation, the statute governs and the regulation is invalid. (*Schilling v. Book* (1980), 84 Ill. App. 3d 972, 405 N.E.2d 824.) Clearly, the success or failure of a statutory scheme may depend upon the expertise of an agency, in which such authority is delegated to adopt regulations as a means to implement the statute. While the Act here generally permits the Department to adopt regulations (Ill. Rev. Stat. 1977, ch. 48, par. 611), such authority cannot be unrestricted, for that would constitute the placing of legislative power directly in the hands of the Department.

■■ Viewing Regulation 14(B) through our construction of section 702, the former clearly seems at odds with the latter and frustrates legislative intent. The effect of the regulation is to give cognate legislative authority to the Department and excuse it from making the required findings under

section 500(C) should the employer fail to challenge a claimant-employee's eligibility. Section 702 is addressed to the giving of notice to an employer so challenging eligibility, but does not mandate such challenge. Neither does it relieve the claims adjudicator of his duty in the absence of such challenge. Thus, it appears to us that the Department, through Regulation 14(B), impermissibly arrogates legislative power. Moreover, as observed in *Fleiszig v. Board of Review* (1952), 412 Ill. 49, 53, 104 N.E.2d 818, 820-21, the purpose of the Act is "to provide benefits for the person who is willing, anxious and ready to obtain employment so that he may support himself and his family * * *." Similarly, it was held in *Wadlington v. Mindes* (1970), 45 Ill. 2d 447, 453-54, 259 N.E.2d 257, 261-62, *appeal dismissed* (1970), 400 U.S. 935, 27 L. Ed. 2d 242, 91 S. Ct. 252, that the Act is designed "to provide benefits for the unemployed person who is willing, anxious, and ready to accept suitable work at a point where there is an available labor market." Validation of the procedure under Regulation 14(B) obviates the necessity to determine the claimant's willingness and readiness to work or his need to find temporary support for his family.

■■ Furthermore, the Department's policy of not making 500(C) determinations in labor dispute cases unless Regulation 14(B) is followed conflicts with decisional law. It has been held that the term "actively seeking work" in section 500(C) presents the administrative agency with a factual issue and thereby imposes upon it a duty "to determine from all the evidence and circumstances whether the claimant made 'a reasonable attempt to find work or to learn of and seek to be placed in possible job openings.' " (*Brown v. Board of Review* (1972), 8 Ill. App. 3d 19, 23, 289 N.E.2d 40, 43.) The finding of "availability for work" likewise is determined from the facts and circumstances of each case, and the statutory requirement is generally satisfied " 'where a worker is ready and willing to accept suitable work at a point where there is an available labor market, which work he does not have good cause to refuse.' " (*Rosenbaum v. Johnson* (1978), 60 Ill. App. 3d 657, 660, 377 N.E.2d 258, 260, quoting *Mohler v. Department of Labor* (1951), 409 Ill. 79, 83, 97 N.E.2d 762, 764; *Stricklin v. Annunzio* (1952), 413 Ill. 324, 109 N.E.2d 183.) The Department's policy, as reflected in Regulation 14, as well as its specific findings in the present case also indicate that it does not require claimants to satisfy the burden imposed on them of establishing their eligibility for benefits under section 500(C). *Rosenbaum v. Johnson; Brown v. Board of Review.*

■■ We recognize the requirements of the Administrative Review Act, providing that agency findings on questions of fact are "prima facie true and correct" (Ill. Rev. Stat. 1979, ch. 110, par. 274), and that this provision has been construed as limiting the power of the reviewing court to ascertain whether the findings and decisions of the agency are against the

manifest weight of the evidence (*Brown v. Board of Review;* also see *Robert S. Abbott Publishing Co. v. Annunzio* (1953), 414 Ill. 559, 112 N.E.2d 101; *Stricklin v. Annunzio*). Stated differently, a court of review cannot reweigh the evidence on appeal from an agency decision but is limited to a determination whether the final decision of the agency is just and reasonable in light of the evidence. (*Pryka v. Board of Fire & Police Commissioners* (1978), 67 Ill. App. 3d 210, 384 N.E.2d 784; *Suttle v. Police Board* (1973), 11 Ill. App. 3d 576, 297 N.E.2d 174.) In view of the record before us, however, we are of the belief that the Department's assessment of the facts and its decisions based thereon are contrary to the manifest weight of the evidence. For the reasons given, we hold that the Act does not authorize the Department to adopt by regulation a scheme for the determination of eligibility which is the functional alternative to that required under section 702, and to the extent that Regulation 14(B) conflicts with the Department's duties under the Act, it is invalid.

■■ Plaintiff further contends that claimants were ineligible for benefits by reason of their involvement in a labor dispute under section 604 of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 434), which provides in relevant part:

"An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed. * * * This Section shall not apply if it is shown that (A) the individual is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work and (B) he does not belong to a grade or class of workers of which immediately before the commencement of the stoppage there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; provided, that a lockout by the employer or an individual's failure to cross a picket line at such factory, establishment, or premises shall not, in itself, be deemed to be participation by him in the labor dispute."

While the Act does not define "labor dispute," it has been held to mean any controversy concerning wages, hours, working conditions or terms of employment. (*Be-Mac Transport Co. v. Grabiec* (1974), 20 Ill. App. 3d 345, 314 N.E.2d 242.) Plaintiff contends that claimant participated in a labor dispute because their refusal to come to work during the AFGWU strike created a controversy over working conditions or terms of employment, and because their actions violated the no-strike clauses of their collective-bargaining agreements. The record indicates, however, that claimants would not have directly benefited from settlement of the AFGWU strike. Neither side sought changes in wages, hours, or terms and

conditions of employment. (*Cf. Central Foundry Division of General Motors Corp. v. Holland* (1976), 36 Ill. App. 3d 998, 345 N.E.2d 143 (labor dispute exists under section 604 if collective-bargaining agreement has expired, both union and employer have submitted demands concerning wages and conditions of employment, and such demands have been neither accepted nor compromised).) Moreover, there was no apparent dispute even as to the no-strike clauses, since defendants do not disagree that they had been violated. Plaintiff thus has failed to demonstrate claimants' direct interest in the settlement of the AFGWU strike. Such direct interest does not exist so as to make claimants ineligible under section 604 if they have no more than a mere expectancy of improved economic terms in their own contract (*General Motors Corp. v. Bowling* (1980), 87 Ill. App. 3d 204, 408 N.E.2d 937) or no enforceable right to benefits obtained by striking members of other unions (*Nestle Co. v. Johnson* (1979), 68 Ill. App. 3d 17, 385 N.E.2d 793). It does not appear, therefore, that claimants' unemployment was caused by a labor dispute within the meaning of section 604, but rather by their refusal to cross picket lines. Such action does not bar them from benefits since the employer is required to show more to support a conclusion that his employees were engaged in a labor dispute. (*Nestle Co. v. Johnson.*) Accordingly, we believe that claimants were properly determined to be "not ineligible" for benefits under section 604.

Plaintiff also contends that the present case could be properly maintained as a defendant class action consistent with section 8 of the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 271) and that the trial court erroneously ruled that each of the more than 2,800 claimants had to be named as individual defendants in view of the fact that only the Director, the Director's representative, and the union officials who represented claimants at the administrative hearings were parties of record to such proceedings. From our reading of section 702, however, we see no need to address this issue, as we think it clear that the present case could not be maintained as a class action in any event.

Section 57.2(a) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57.2(a)) provides that a class action may be maintained only if the court finds that each of the following prerequisites is met:

"(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy."

It is clear that prequisite (2) is not met unless "there are questions of fact or law common to the class and these predominate over questions affecting only individual members of such class." (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 338, 371 N.E.2d 634, 643.) Here, based on the discussion above concerning sections 500(C) and 702 of the Act, it appears to us that the proposed class action cannot be sustained because individual determinations of eligibility are required of the class members. As to each, the common questions of the law presented thereby are overshadowed by both questions of fact and the particular application of the law. Included in the factors affecting specific eligibility are unemployment at the time of application for benefits, ability to work, and the availability and search for work. (See Ill. Rev. Stat. 1977, ch. 48, par. 420(C).) All such factors are likely to vary among individuals for each week that eligibility is determined. (*Cf. Morrissy v. Eli Lilly & Co.* (1979), 76 Ill. App. 3d 753, 394 N.E.2d 1369 (class action could not be maintained where court found that necessity to determine proximate cause individually predominated over common questions of law and fact in action to recover for increased risk to daughter of developing cancer or other illness due to mother's use of experimental drug).) For these reasons, prerequisite (2) of section 57.2 is not satisfied and, therefore, the proposed class action status in the present case cannot be sanctioned.

Finally, we consider the trial court's admission into evidence of two affidavits. The first, by the Department's Administrator of Employment Security, stated that claims for benefits are determined individually under section 604, but it is silent as to the section 500(C) determination and thus has no bearing on the latter question. Accordingly, plaintiff was not prejudiced by its admission. The second affidavit, by the Department's Commissioner of Unemployment Insurance, pertained to Regulation 14(B). In view of the foregoing discussion, it too is without effect.

The result of our reversal here is to require the Department to determine the eligibility of claimants for the period of time covered by the AFGWU strike in accordance with the mandate of the Act. Accordingly, the judgment of the trial court is reversed and the cause is remanded to the Department with the direction that further proceedings be held by it consistent with this opinion. See *Basketfield v. Daniel* (1979), 71 Ill. App. 3d 877, 390 N.E.2d 492.

Reversed and remanded with directions.

MEJDA and WILSON, JJ., concur.