ROGER WENTHOLD *et al.*, Plaintiffs-Appellees, v. AT&T TECHNOLOGIES, INC., Defendant and Third-Party Plaintiff-Appellant (LOCAL 81, INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO & CLC, Third-Party Defendant).

First District (2nd Division)   No. 85—1893

Opinion filed March 31, 1986.

Gerald D. Skoning, Charles C. Jackson, and Thomas J. Piskorski, all of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Richard J. Puchalski, Special Assistant Attorney General, of Chicago, of counsel), for appellee Al Bernardi.

Eugene I. Pavalon and Stephen Feinberg, both of Asher, Pavalon, Gittler & Greenfield, Ltd., of Chicago, for appellees Roger Wenthold, Edward McCann and T. L. Antisdel.

JUSTICE HARTMAN delivered the opinion of the court:

In this interlocutory appeal (87 Ill. 2d R. 308(a)), defendant AT&T Technologies, Inc. (AT&T), challenges the circuit court's certification of plaintiffs' class in an action to recover past overtime payments due under the minimum wage law (Ill. Rev. Stat. 1983, ch. 48, par. 1004a(1)). We are asked to decide, essentially, whether: the applicability of an exemption to the overtime provisions of the minimum wage law raises individual questions of law or fact which predominate so as to preclude class treatment; and, plaintiffs are inadequate class representatives. Ill. Rev. Stat. 1983, ch. 110, pars. 2—801(2), (3).

The overtime provision of the minimum wage law requires that workers performing in excess of 40 hours per week must be paid at a rate not less than 1½ times the hourly wage. (Ill. Rev. Stat. 1983, ch. 48, par. 1004a(1).) The law, however, sets forth a series of exemptions, including "administrative employees," as defined in the Federal Fair Labor Standards Act of 1938 (29 U.S.C. secs. 201 et seq. (1982)). Ill. Rev. Stat. 1983, ch. 48, par. 1004a(2)(E).

In this action, plaintiffs Wenthold, McCann and Antisdel are employed as engineering associates (EAs) by AT&T at its Rolling Meadows plant. On August 6, 1982, Wenthold and McCann filed a complaint in the circuit court on behalf of themselves and similarly situated EAs seeking payment of past due overtime payments. The Illinois Department of Labor (Department) filed suit against AT&T on August 18, 1982, seeking injunctive relief in the form of an order compelling AT&T to make overtime payments in accordance with the minimum wage law. The two lawsuits were consolidated by circuit court order. For convenience, the term "plaintiffs" used here refers only to the EAs.

Prior to the lawsuits being filed, administrative relief was sought in proceedings before the Department, which resulted in findings in May of 1982 that the EAs were not exempt administrative employees; rather, they were entitled to overtime pay pursuant to the minimum wage law. On July 30, 1982, AT&T issued a policy statement declaring that, effective January 1, 1983, EAs would be treated as nonexempt.

In response to the lawsuits, AT&T filed answers setting out dispositive defenses including those based on the statute of limitations; public policy; failure to exhaust grievance procedures; laches; unclean hands; waiver; estoppel; and good faith, in addition to the administrative employee exemption defense. AT&T also counterclaimed against Wenthold and McCann alleging that because they had been president and vice-president respectively of their union local, Local 81, International Federation of Professional and Technical Engineers, AFL-CIO & CLC (Union), and had participated in the collective bargaining negotiations which resulted in the overtime payment arrangement now claimed to be illegal, they are equally culpable and liable to AT&T for any judgment imposed against it.

The overtime schedule was, in part, the subject of a Union and AT&T collective bargaining agreement in effect since at least May 1975 and was as follows: EAs, whose base wages per month are less than a negotiated "cutoff" figure, are paid in accordance with the overtime provision of the minimum wage law: for hours worked beyond a 40-hour week, EAs are paid 1½ times their hourly wage; however, EAs whose base wages per month are above this "cutoff" figure are paid something less than 1½ times their hourly wage for any hours worked in excess of 40 per week. Plaintiffs fall into this second group of EAs whose earnings are above the "cutoff."

On October 25, 1982, an amended complaint added Antisdel as a named plaintiff. AT&T thereafter filed a third-party complaint against the Union for contribution stemming from its alleged complicity with AT&T in imposing the "cutoff" scheme.

Plaintiffs sought certification of their action for class-wide treatment, which AT&T opposed. Both parties filed extensive memoranda in support of their positions.

Exhaustive hearings were conducted on the issue of class certification. Plaintiffs' testimony described their duties in general to include development of installation specifications and ordering of equipment needed for a particular customer's order for a telephone system after the customer order has been first analyzed by a professional engineer who determines which drawings and diagrams are necessary in

considering what equipment must be installed and installation specifications. EAs are neither "professional" nor "executive" employees. A computer printout prepared by AT&T of AT&T payroll records, made part of the record on appeal, contains an analysis of each EA's work record showing, in part, hours worked, amount of salary actually paid, and amount of salary required to be paid under Illinois law if the exemption is inapplicable. Certain information is, as yet, missing from the report, such as vacations, personal days and floating holidays. AT&T produced evidence that EAs' job functions may vary in accordance with their relationships to the general business operations of AT&T and its customers; their experience and ability; and the degree of discretion and judgment AT&T can delegate to them according to their individual capacities, resulting in a highly diversified group in terms of job duties and responsibilities. They are ranked in nine separate performance bands (cells) according to job characteristics and attributes. AT&T's engineering manager agreed, however, that of 310 EAs employed at the Rolling Meadows plant, 90% actually perform the work of writing specifications and ordering equipment, and are predominantly involved in system equipment engineering, although there are differences in specific job duties they may perform.

The circuit court made the requisite findings and certified a class of EAs whose principal job duties are writing specifications and ordering equipment. AT&T successfully moved to certify questions for interlocutory appeal concerning the propriety of class certification, which we allowed.

I

■ Certification of a class is within the sound discretion of the circuit court and will be disturbed only if there is an abuse of that discretion or if impermissible legal criteria are applied. (*Schlenz v. Castle* (1981), 84 Ill. 2d 196, 203, 417 N.E.2d 1336, *appeal dismissed* (1981), 454 U.S. 804, 70 L. Ed. 2d 73, 102 S. Ct. 76; *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 464, 389 N.E.2d 565, *cert. denied* (1979), 444 U.S. 916, 62 L. Ed. 2d 170, 100 S. Ct. 230.) Review of certification is not an independent *de novo* evaluation of the factors alleged to justify certification (*Carrao v. Health Care Service Corp.* (1983), 118 Ill. App. 3d 417, 427, 454 N.E.2d 781), but is limited to assessing the discretion exercised by the circuit court (*McCabe v. Burgess* (1979), 75 Ill. 2d 457, 464-65, 389 N.E.2d 565).

■ Section 2—801 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—801) prescribes four bases upon which the circuit court may certify a class action: (1) the class is so numerous as to

make joinder impracticable; (2) questions of law or fact common to the class predominate over questions affecting only individual members; (3) the interests of the class will be adequately protected by the class representatives; and (4) class treatment is an appropriate means for the fair and efficient adjudication of the controversy. The circuit court here was required to find that plaintiffs established these requirements. (*Wheatley v. Board of Education* (1984), 99 Ill. 2d 481, 486, 459 N.E.2d 1364.) AT&T contends that plaintiffs have failed to sustain their burden of proof as to the second and third prerequisites.

█ With respect to the requirement that common issues of law or fact predominate, AT&T maintains that its administrative employee exemption defense necessitates such individual determinations that class treatment is improper, noting that the Code of Federal Regulations indicate the individualized character of applying the exemption. (29 C.F.R. secs. 541.201(b)(2), 541.205(c)(3), 541.205(c)(6), 541.207(b)(1), 541.207(c)(7), 541.207(d)(2), 541.208(b)(3) (1985).) Further, AT&T cites Federal district court decisions for the proposition that the applicability of the exemption is an individual question of fact (*Stanger v. Glenn L. Martin Co.* (D. Md. 1944), 56 F. Supp. 163, 165; *Wells v. Radio Corp. of America* (S.D. N.Y. 1948), 77 F. Supp. 964, 967-68), which precludes class treatment of an action for overtime pay when the exemption is raised as a defense (*Fowkes v. Dravo Corp.* (E.D. Pa. 1945), 62 F. Supp. 361, 362, *modified on other grounds* (E.D. Pa. 1946), 75 F. Supp. 514). More recent Federal authorities, *e.g., Woods v. New York Life Insurance Co.* (7th Cir. 1982), 686 F.2d 578, and *Dolan v. Project Construction Corp.* (10th Cir. 1984), 725 F.2d 1263, approve such actions brought "*** by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" by virtue of section 16(b) of the Fair Labor Standards Act (29 U.S.C. sec. 216(b) (1982)). The question raised in those cases is the role to be played by the Federal courts in the notice procedures relating to putative class members. See *McKenna v. Champion International Corp.* (8th Cir. 1984), 747 F.2d 1211.

In Illinois, where the predominant questions are individualized, class treatment will be denied. (*McCabe v. Burgess* (1979), 75 Ill. 2d 457, 465-67, 389 N.E.2d 565; *Morrissy v. Eli Lilly & Co.* (1979), 76 Ill. App. 3d 753, 761, 394 N.E.2d 1396; *Gutansky v. Advance Mortgage Corp.* (1981), 102 Ill. App. 3d 496, 499-501, 430 N.E.2d 122.) In *Owens-Illinois, Inc. v. Bowling* (1981), 99 Ill. App. 3d 1117, 429 N.E.2d 172, *aff'd as modified* (1983), 95 Ill. 2d 397, relied upon by AT&T, class certification of a group of striking employees seeking unemployment benefits was reversed despite the fact that this group

had articulable commonalities. The appellate court held that the individual eligibility of each employee for unemployment benefits overshadowed any commonalities. *Owens-Illinois, Inc. v. Bowling* (1981), 99 Ill. App. 3d 1117, 1129, 429 N.E.2d 172.

AT&T's reliance on *Owens-Illinois, Inc. v. Bowling* is misplaced. There, the only real issue involved was plaintiff's eligibility for unemployment benefits. The court pointed out that only individual questions affecting eligibility such as unemployment at the time of benefit application, ability to work, and the availability and search for work were left to be determined. (*Owens-Illinois, Inc. v. Bowling* (1981), 99 Ill. App. 3d 1117, 1129, 429 N.E.2d 172.) In contrast, the instant case involves a variety of issues the resolution of which will be common to all class members and only one issue, exemption, potentially requires individual determinations.

AT&T maintains that the circuit court misconstrued the "predominance" standard by its finding that the common issues of law or fact associated with AT&T's other defenses predominate over individual questions raised by the applicability of the administrative employee exemption, citing *Nebel v. City of Chicago* (1977), 53 Ill. App. 3d 890, 902, 369 N.E.2d 74, for the principle that an issue predominates if its resolution effectively disposes of an entire controversy. AT&T insists that the applicability of the exemption is such an issue and the other defenses relied on by the circuit court are only minor issues, concluding that the requirement of commonality of issues of law or fact has not been satisfied.

■ The circuit court in the present case relied on *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 337-38, 371 N.E.2d 634, in which our supreme court held that the proper inquiry in certifying a class is whether the common issues predominate and that class actions are not barred if some class members are not entitled to relief due to some particular factor. Applying this principle to the instant case, the circuit court emphasized that there were at least five or six common issues of law or fact, including: the application of the statute of limitations; the applicability of the doctrines of *laches*; good faith and unclean hands; whether the collective bargaining agreement between the Union and AT&T supercedes the minimum wage law; and whether plaintiffs were required to exhaust the Union grievance procedure. The court found that these commonalities predominate. AT&T's suggestion that the commonalities are merely minor issues is not persuasive since they could have dispositive impacts upon this entire controversy, whereas the applicability of the exemption, as an individual matter, may not have such an effect.

The circuit court did acknowledge that AT&T's exemption defense may require some individual determinations; however, as plaintiffs note, these may be dealt with on subclass bases. Class actions may be maintained even where classes are divided into subclasses, with each subclass being treated as a class under section 2—802(b) of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—802(b); *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 17, 428 N.E.2d 478, *cert. dismissed* (1982), 459 U.S. 86, 74 L. Ed. 2d 249, 103 S. Ct. 484.) In *Miner* among the questions raised was the propriety of class certification where the laws of 50 States may differ, yet may be manageably diverted into subclasses, a procedure tentatively approved by our supreme court. In the case *sub judice*, classes of EAs may also be divided into subclasses, if necessary, with no greater inconvenience than that made apparent in *Miner v. Gillette Co.*

Given the standard of review in such cases, the existence of five or more common issues, which themselves may be dispositive of the case, in contrast with one which may require some individual determinations, leads us to conclude that the circuit court properly exercised its discretion. *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 389 N.E.2d 565.

## II

■ AT&T's contention that plaintiffs have not satisfied the third prerequisite to class certification, adequate protection of class interests by the class representatives (Ill. Rev. Stat. 1983, ch. 110, par. 2—801(3)) is based primarily on the fact that Wenthold and McCann served as president and vice president of the union local during the collective bargaining negotiations which led to the adoption of the challenged "cutoff" scheme.

AT&T has filed both counterclaims against Wenthold and McCann and a third-party complaint against the Union alleging that their complicity in negotiating the "cutoff" scheme renders them liable for any judgment entered against AT&T. It is asserted that the defense of this counterclaim and third-party complaint gives rise to a conflict of interest between the roles Wenthold and McCann must play as individuals, union officials and class representatives. AT&T urges that a class representative who supported a contract provision challenged as unlawful presents a conflict of interest so serious as to preclude class certification (*Anderson v. Southern Pacific* (N.D. Cal. 1973), 20 Fed. R. Serv. 2d 110, 111) and that a union may be liable for agreeing to a contract provision later found to be in violation of wage-hour laws (*Angulo v. Levy Co.* (N.D. Ill. 1983), 568 F. Supp. 1209, *aff'd sub nom.*

*Flores v. Levy Co.* (7th Cir. 1985), 757 F.2d 806). AT&T concludes that the positions which Wenthold and McCann must take are irreconcilable and ultimately could defeat their personal claims, rendering them inadequate class representatives in that a class representative is inadequate without a personal claim. *Perlman v. Time, Inc.* (1985), 133 Ill. App. 3d 348, 354, 478 N.E.2d 1132.

The record demonstrates that Wenthold and McCann are knowledgeable and persistent class representatives who have the support of the certified class. Their deposition testimony reflects an awareness of the problems raised by the "cutoff" scheme and a continued opposition to it. They vigorously challenged the "cutoff" scheme in proceedings before the Department for two years, which eventually resulted in findings in their favor. In the circuit court, and in this court, Wenthold and McCann have relentlessly pursued the interests of the class. Their actions do not suggest that they are hamstrung by conflicting interests. It should be noted that the sufficiency of AT&T's third-party claim against the Union, which would have bearing on the counterclaim against Wenthold and McCann, has been challenged and is still pending in the circuit court. It would be inequitable to allow the assertion of these claims to disqualify as representatives two parties that have demonstrated their knowledge of the issues and persistent efforts to secure the rights of the class. The circuit court focused upon the ability of counsel in finding the adequacy of class representation; nevertheless, the foregoing suggests that there was ample evidence before the court upon which to find Wenthold and McCann adequate representatives.

■ AT&T also suggests that there is a conflict of interest in having the same legal counsel represent the Union and the class. Although the circuit court clearly was impressed with the ability of counsel, the court also recognized the possibility of a conflict of interest in this dual representation. Any conflict could be cured by court order that either the Union or the class retain alternative counsel; decertification of the class would be unnecessary. Upon remand, the circuit court must enter such an order relating to alternative counsel should that step become necessary.

■ Lastly, AT&T challenges the adequacy of Antisdel as a class representative, relying on the fact that he was unaware that he had been named as a plaintiff until he received a notice for his deposition. It is suggested that Antisdel was added as a named plaintiff because Wenthold and McCann recognized their own shortcomings as representatives. Citing *Schlenz v. Castle* (1980), 80 Ill. App. 3d 1131, 1133, 400 N.E.2d 753, AT&T contends that Antisdel's ignorance of the

action renders him an inadequate representative.

Antisdel's deposition indicates, however, that he was aware of the alleged problems with the "cutoff" scheme since 1978. He stated that the scheme was discussed at Union meetings and that at one such meeting he volunteered to join the lawsuit. These facts distinguish *Schlenz v. Castle*, in which the disqualified representative knew virtually nothing about the lawsuit. Here, Antisdel has demonstrated knowledge about the suit and a willingness to be a representative. AT&T's challenge to this representation is unfounded.

For the foregoing reasons we find no abuse of discretion in the class certification entered by the circuit court. Accordingly, we affirm.

Affirmed.

BILANDIC, P.J., and SCARIANO, J., concur.