BE-MAC TRANSPORT COMPANY, INC., Plaintiff-Appellee, *v.* BARNEY GRABIEC, Director of Department of Labor, *et al.,* Defendants-Appellants.

(No. 58183; )

First District (1st Division)—June 3, 1974.

William J. Scott, Attorney General, of Chicago (John D. Whitenack, Assistant Attorney General, of counsel), for appellant Barney J. Grabiec.

Sherman Carmell, Sheldon M. Charone, and Stephen Horwitz, all of Chicago (Carmell & Charone, Ltd., of counsel), for appellant Local 705 I.B. of T.

Lester Asher, Donald W. Cohen, Eugene I. Pavalon, and John S. Adler, all of Chicago (Asher, Greenfield, Gubbins and Segall, Ltd., of counsel), for appellant Local 710 I.B. of T.

Leonard R. Kofkin and Donald B. Levine, both of Chicago (Axelrod, Goodman, Steiner & Bazelon, of counsel), for appellee Be-Mac Transport Company, Inc.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Barney J. Grabiec, Director of Illinois Department of Labor, Bureau of Employment Security, Division of Unemployment Compensation (Director) and a group of employees (claimants) of Be-Mac Transport Company, Inc. (plaintiff) have appealed from an administrative review decision by the circuit court which held claimants ineligible for unem-

ployment compensation. (Ill.Rev. Stat. 1973, ch. 48, par. 434.) Certain of the claimants were employed by plaintiff as truck drivers in the city only, as distinguished from interstate or over-the-road drivers. They are represented by Local 705 of the International Brotherhood of Teamsters. The remaining claimants are employed by plaintiff as dockhands and office workers. They are all members of Local 710 of the International Brotherhood of Teamsters.

It is undisputed that all of these described employees were employed by plaintiff prior to the commencement of this litigation at plaintiff's transportation and freight facility in Chicago Ridge, Illinois. On March 31, 1970, the collective bargaining agreements between plaintiff and Teamsters Locals 705 and 710 expired. On April 1, 1970, plaintiff sent a certified letter to each of the 10 percent of its employees who were lowest on the seniority list. This letter advised: "Due to labor problems in some of our terminals and a reduction in the flow of freight, it is necessary to place you on a temporary lay-off status effective immediately." The reduction in the flow of freight to which this letter referred took place because of labor problems in other terminals maintained by plaintiff in Illinois and outside of the state. On April 3, 1970, plaintiff sent a letter by certified mail to each and all of the remaining 90 percent of its employees containing the identical language. However, on April 4, 1970, by a series of telephone calls, plaintiff recalled to work 10 percent of all of its employees with the highest seniority rank.

On April 10, 1970, plaintiff sent a certified letter to all of its employees, except only certain mechanics whose rights are not pertinent here. These letters advised that they superseded the notices of lay-off dated April 3, 1970. These letters also stated, "We are sorry to inform you that effective 6:00 A.M. April 10, 1970, we must lock you out until further notice to protect our bargaining position with your union." It is agreed that this lockout notice remained in full force and effect until new collective bargaining agreements had been reached by plaintiff with the representatives of Teamsters Locals 705 and 710, which took place on or about July 3, 1970.

The issues between the parties hereto concern claims for unemployment compensation for the period from April 10, 1970 through July 4, 1970. It is undisputed that a national master freight labor agreement had been entered into as of April 1, 1970. The new agreement between plaintiff and Local Unions 705 and 710, effective July 3, 1970, gave employees of these local unions wages over and above those provided in the national agreement, retroactive to April 1, 1970, the date of the national contract. Those of plaintiff's employees who were recalled to work by

telephone on April 4, 1970, and who were thus employed at the time of the lockout, whose claims for compensation were denied, have not appealed.

Upon processing of claims for unemployment compensation filed by the claimants, a deputy of the Division of Unemployment Compensation ruled these claimants ineligible because their unemployment after April 10, 1970, was due to a labor dispute at their last place of employment which condition persisted through July 4, 1970. An appeal was taken and a hearing was held before a representative of the Director. Upon analysis of the evidence, this officer held the claimants "not ineligible" for unemployment benefits. He made the following specific findings of fact:

"1. There was a stoppage of work at the Chicago terminal of the employer during the period from April 10, 1970 through July 4, 1970.

2. The stoppage of work was due to a labor dispute which existed at the Chicago terminal of the employer during the aforesaid period.

3. The unemployment of the claimants herein, either as parties respondent or as appellant was not due to the said stoppage of work because of the said labor dispute.

4. The unemployment of the claimants herein was due directly to a lack of available work at the employer's Chicago terminal."

Plaintiff sought further review of this ruling urging, among other contentions, "[t]here can be no doubt in this proceeding that the claimants were unemployed from April 1, 1970, and that such employment [*sic*] was due solely and exclusively to a labor dispute." In due course, the Director affirmed the determination by the deputy as regards all matters pertinent here and accordingly held that all of the employees were "not ineligible" for benefits.

Plaintiff then filed a complaint for judicial review of this administrative decision. (Ill. Rev. Stat. 1973, ch. 110, pars. 264 and following.) After consideration of memoranda of fact and law and hearing lengthy oral arguments, the trial judge filed a memorandum and judgment order. We must point out here the extreme and unusual difficulties imposed upon the trial judge in this matter. He was confronted with four able and forceful lawyers, all of whom did their best to influence his thinking by a plethora of argument and legal citations in the esoteric field of unemployment compensation. In addition, the findings by the Director's representative presented several difficult and perplexing inconsistencies or ambiguities; or at least the appearance thereof. Furthermore, both sides of the controversy shifted their positions on at least one occasion.

■■ In his memorandum, the trial court pointed out that the initial unemployment suffered by all of the employees here involved, was caused by lack of work at plaintiff's Chicago facility. The trial court properly held that the presence or absence of labor disputes in other separate facilities operated by plaintiff was not material in reaching this determination. (*Walgreen Co. v. Murphy*, 386 Ill. 32, 53 N.E.2d 390.) The trial court also devoted considerable effort to a determination as to whether or not there was a labor dispute between plaintiff and the employees at the time of the lockout. The court concluded that there was an issue regarding this question which was not properly answered by the findings placed before the court by the Director. The court accordingly directed that the cause be remanded to the Director with instructions that he vacate the previous findings Nos. 2, 3 and 4 (as above noted) and that he proceed to make a factual determination as to "whether the lockout resulted from a labor dispute within the meaning of Section 604" of the Unemployment Compensation Act of Illinois (Ill. Rev. Stat. 1973, ch. 48, par. 434), the statute here involved.

As the trial judge correctly pointed out, the rights of these parties are governed by the language of this statute which is as follows:

> "An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed, provided, that this Section shall not apply if it is shown that (A) he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work and (B) he does not belong to a grade or class of workers of which immediately before the commencement of the stoppage there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; provided, that if in any case separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purpose of this Section, be deemed to be a separate factory, establishment, or other premises.
>
> Whenever any claim involves the provisions of this Section, the claims adjudicator referred to in Section 702 shall make a separate determination as to the eligibility or ineligibility of the claimant with respect to the provisions of this Section. This separate determination may be appealed to the Director in the manner prescribed by Section 800."

In due course, the Director filed an amended decision containing 12 specific findings of fact. The Director found that his conclusions previously reached were supported by the record. He found that the unemployment of all of the claimants occurred on April 1, 1970, and on April 3, 1970, by virtue of the notices of lay-off above described. Consequently,. he found that there was a stoppage of work at the Chicago terminal on April 3, 1970, which was not due to a labor dispute. He also found that partial operations at the Chicago terminal were resumed on April 4, 1970, but a stoppage of work occurred on April 10, 1970, when the lockout was instituted. The Director further found that the employees involved in this appeal "were not in employment for this employer at such time as the stoppage of work due to the lockout occurred." The Director also found that all of the employees "had become unemployed because of a lack of available work and not because the stoppage of work was due to a labor dispute" and that all of them were "not ineligible" under the applicable statute.

Upon the filing of this amended decision by the Director, plaintiffs moved the court to vacate it. Additional authorities were cited by both sides of the controversy and additional argument was heard. At this point, all counsel advised the court that they stipulated that there was a labor dispute between plaintiff and the unions at the time of the lockout on April 10, 1970. At the conclusion of the entire argument, the court reversed the result reached by the Director and ruled that all of the claimants involved in this appeal were not eligible for compensation.

In this court, separate briefs have been filed by the Attorney General and by each of the labor unions. Generally speaking, they contend the Unemployment Compensation Act is a remedial statute which should be liberally construed; the findings of the Director should be affirmed unless they are against the manifest weight of the evidence; the result reached is repugnant to public policy; the existence of a labor dispute does not automatically disqualify a claimant but a labor dispute must be the cause of the work stoppage to disqualify; and lack of sufficient work was the direct and proximate cause of unemployment of the claim-. ants. Plaintiff urges that the amended decision of the Director was against the manifest weight of the evidence; the claimants were unemployed from April 10, 1970, solely because of the existence of a labor dispute at the terminal in question; the lockout of April 10, 1970, was a labor dispute within the meaning of the statute and was the direct cause of the unemployment of claimants; and, finally, claimants failed to establish eligibility for benefits.

It is first necessary to refresh our recollection as to the precise mean-

ing of terms commonly used in this type of litigation. "Labor dispute" as used in the pertinent statute, has been defined as "any controversy concerning wages, hours, working conditions or terms of employment. *Oil Workers Union v. Gordon*, 406 Ill. 145; *Fash v. Gordon*, 398 Ill. 210; *Local Union No. 11 v. Gordon*, 396 Ill. 293." *Buchholz v. Cummins*, 6 Ill.2d 382, 387, 128 N.E.2d 900.

■■ We are further assisted by the same decision from which we learn that a lockout may be defined as "'a cessation of furnishing of work to employees in an effort to get, for the employer, more desirable terms'"; or, alternatively as a "'suspension of operations by the employer resulting from a dispute with his employees over wages, hours, or working conditions.'" We also learn "'that a strike may be generally defined as a stoppage of work by common agreement [by the employees] for the purpose of obtaining or resisting a change in the conditions of employment.'" (6 Ill.2d at 388.) In addition, the court has construed the pertinent statute as making "no distinction in principle between a lockout and a strike" and that "a labor dispute, within the purview of our statute, includes a lockout." (6 Ill.2d at 388.) The phrase "stoppage of work" as used in the statute refers "to a stoppage of work at the plant or particular department of a plant and not to the individual unemployment of the worker or workers." (*Abbott Publishing Co. v. Annunzio*, 414 Ill. 559, 569, 112 N.E.2d 101.) It may also be useful to note that "stoppage of work" ends when the employer's business operations return to a substantially normal condition. *Travis v. Grabiec*, 52 Ill.2d 175, 182, 287 N.E.2d 468.

■■ Applying these clear principles to the record before us, a stoppage of work undoubtedly occurred at plaintiff's plant on April 3, 1970. This was not due in any direct sense to a labor dispute but, as stated by plaintiff in its own letter to its employees, this stoppage was caused by economic conditions or by shortage or unavailability of work for the employees at plaintiff's Chicago terminal. As already pointed out, the fact that this shortage may in turn have been caused by labor disputes in other installations operated by plaintiff is of no legal significance. (*Walgreen Co. v. Murphy*, 386 Ill. 32, 53 N.E.2d 390.) It follows necessarily that the administrative finding (No. 3) that the unemployment of the claimants herein was not "due to the said stoppage of work because of the said labor dispute" is legally and factually correct as it pertains to the period from April 3, 1970 to April 10, 1970.

■■ Thus, we must conclude that each and all of the claimants here involved were eligible for unemployment compensation on April 10, 1970, when plaintiff sent its certified letter to them advising of the lock-

out. The remaining issue is the effect of this subsequent lockout, which resulted from a labor dispute as the parties stipulated, upon the rights of claimants who at the time were unemployed because of unavailability of work at the employer's premises. We find no authority in Illinois which answers this precise question. All of the cases cited by able counsel deal with strikes which took place after involuntary unemployment. Our own search discloses no case dealing with a lockout under these circumstances. However, examination of the authorities in other jurisdictions leads us to conclude that the proper governing principle in cases of this type involving strikes may well be stated as follows: if unemployment of a claimant is originally caused by lack of work and a labor dispute develops during this period, this does not disqualify him from unemployment compensation until work becomes available and he refuses to accept this work because of the strike resulting from a labor dispute.

This basic theory is developed in a number of decided cases. In *Muncie F. Division v. Review Board*, 114 Ind. App. 475, 51 N.E.2d 891, the employer notified the union that all assets of the company were to be sold and the employment contract was canceled. Some 2 weeks later the union was informed that the plant had been sold to another company. All employees were notified that they would receive their pay in full on the last day of the year and that the office would be open for 4 days prior thereto to receive applications for employment. Thereafter a labor dispute (strike) developed and there was picketing for some 12 days. The new employer advised the mediation service that the plant would not be ready to reopen for some 30 days, pending installation of new equipment. The record thus presented a stoppage of work due to lack of employment and a subsequent strike because of a labor dispute.

The court held that the evidence sufficiently sustained a finding that the unemployment of the claimants was not due to the labor dispute. The court reasoned that if work actually existed at the plant after completion of the sale, the conclusion would be "inevitable that the failure to work was due to the labor dispute." On the contrary, if the lack of available work at the plant, which caused the original unemployment, continued to exist throughout the period in which there was a labor dispute, the result would necessarily be that the unemployment of the claimants was not caused by the labor dispute. (See 51 N.E.2d at 894.) The *Muncie* court thus noted that the "vital factual question was" whether work was available at the plant during the time of the labor dispute. (51 N.E.2d at 894.) The court also described the remaining element as refusal of the claimants to accept work. In other words, the

court held that existence of a labor dispute and a strike subsequent to unemployment originally caused by unavailability of work does not in and of itself, ipso facto, terminate eligibility to receive unemployment compensation.

In the later case of *Sweeney v. Board of Review*, 43 N. J. 535, 206 A. 2d 345, in a similar situation involving a strike, the Supreme Court of New Jersey reached the same result. Among other authorities, the court cited the decision of the Indiana court in *Muncie*. The New Jersey court pointed out that claimants are not necessarily disqualified by the mere existence of a labor dispute subsequent to unemployment without more. The labor dispute must itself be the cause of the unemployment. This comports with the Illinois test since our statute provides that the unemployment must be "due to a stoppage of work which exists because of a labor dispute at the factory." Citing a number of authorities, the New Jersey court stated the principle that the development of a labor dispute during unemployment caused by unavailability of work does not disqualify the employee "until work becomes available and he refuses the work because of the dispute." See 206 A. 2d at 348.

It may well be that astute counsel, as always, can ferret out factual differences between these cases and the one before us. However, upon fair reading of these and other decisions, it seems abundantly clear that this principle must constitute our guiding light in decision of the case before us. (See also in accord *Tucker v. American Smelting & Refining Co.*, 189 Md. 250, 55 A. 2d 692, and *Abbott v. Appeal Board*, 323 Mich. 32, 34 N.W.2d 542.) In our opinion, the pertinent statutes in these four jurisdictions parallel the Illinois enactment to such an extent as to make the decisions persuasive authority.

We see no reason why this principle so strongly adopted in situations involving an involuntary cessation of employment and a subsequent strike, should not be applied to similar cases revolving about a lockout which resulted from a labor dispute. Our Illinois statute does not use the terms lockout or strike but refers generically to "a labor dispute at the factory." Our courts have stated that there is no distinction in principle between a lockout and a strike (*Buchholz v. Cummins*, 6 Ill.2d 382, 387, 388, 128 N.E.2d 900), and that "a labor dispute, within the purview of our statute, includes a lockout." (See 6 Ill.2d at 388.) Note also the language of another portion of the pertinent statute referring "to a strike, lockout, or other labor dispute." (Ill. Rev. Stat. 1973, ch. 48, par. 433.) We will, therefore, apply to this cause involving a lockout the same test applied by the great weight of authority to similar situations involving strikes. The questions to be answered are whether work

was available to these claimants at the terminal during the disputed period (April 10, 1970 to July 4, 1970); and, if so, did they refuse to work because of the labor dispute.

Plaintiff urges that the burden of proof in answering these questions rested upon the claimants. Plaintiff cites *Brown v. Board of Review*, 8 Ill.App.3d 19, 23, 289 N.E.2d 40, decided by this court under Ill. Rev. Stat. 1971, ch. 48, par. 420. The holding in *Brown* is limited to the burden of proof requirement as regards need for active search for work by the claimant. On the contrary, reading of that portion of the statute here involved shows decisively that it incorporates a factor of causal connection between the total or partial unemployment of the claimant and the labor dispute. This is strongly indicated by use of the phrases "due to" and "because of." Also the last portion of the pertinent statute which requires a separate administrative "determination as to the eligibility or ineligibility of the claimant with respect to the provisions of this section" would seem to indicate a legislative desire for separate treatment of factual problems which might be created by this enactment.

■■ Furthermore, the factual issue regarding availability of work at any plant during any given period of time is generally a matter peculiarly within the knowledge of the employer; diametrically different from the active search for work test which is solely within the knowledge of the worker. Therefore, in the process of attempting to bring otherwise eligible claimants within the affirmative defense created by this specific exception in the statute, the burden of proof should logically rest upon the employer. In addition, the nature and purpose of unemployment compensation legislation requires that we give the Act a liberal construction. (*Huggins v. Board of Review*, 10 Ill.App.3d 140, 143, 294 N.E.2d 32 and other authorities there cited.) We conclude that the burden of proof of avoiding continuing eligibility because of this affirmative defense of availability of work and refusal thereof rested upon the plaintiff.

■■ As regards availability of work, the Director originally approved a specific finding of fact by his representative that "the unemployment of the claimants herein was due directly to a lack of available work at the employer's Chicago terminal." The specific findings by the Director of eligibility of all claimants under this particular section of the statute necessarily presupposes a finding that there was not sufficient evidence to invoke the statutory exception to their continued eligibility. In addition, examination of the entire record also indicates that any administrative finding that the unemployment of these claimants was due to the labor dispute and not to unavailability of work could not be sustained in a court of review. On April 4, 1970, plaintiff recalled only 10 percent of its work force. No additional employees were recalled thereafter until

April 10, 1970, when the lockout was proclaimed. The only evidence bearing on availability of work on that day was merely that there was freight on plaintiff's dock on April 9 but not enough to require recall of all plaintiff's drivers. There is no evidence to support plaintiff's contention that there was "a substantial amount of freight on plaintiff's dock on that date." Plaintiff's own conduct shows that on April 4, 1970, there was only sufficient work to recall 10 percent of plaintiff's drivers. There is no evidence of a drastic increase of work availability between April 6 and April 10, 1970. Similarly there is no evidence that full work was resumed at plaintiff's terminal on July 4, 1970, when the national union contract was signed. The record shows only that plaintiff resumed normal operations on some unspecified date after July 3, 1970.

On the contrary, the record shows that between April 6 and April 10, 1970, the labor problem in other installations operated by plaintiff had expanded "a little bit." In cases of this type, since the condition of unavailability of work is indisputably evident at least until April 10, 1970, the prior existence of this same situation is "in human experience some indication of its probable persistence or continuance at a later period." (See 2 Wigmore on Evidence (3d ed.) sec. 437, cited with approval in *Petersen v. General Rug & Carpet Cleaners, Inc.*, 333 Ill.App. 47, 66, 77 N.E.2d 58; also *In re Chicago & Northwestern Ry. Co.* (7th cir. 1943), 138 F. 2d 753, 755.) This same principle is conversely applied to show that a condition subsequently established had prior existence. *Gass v. Carducci*, 37 Ill.App.2d 181, 190, 185 N.E.2d 285.

Other analysis leads inevitably to the same result. As shown, the Director approved a specific finding of fact that "the unemployment of the claimants herein was due directly to a lack of available work at the employer's Chicago terminal." Not only are we mandated by statute to accept this finding as being "prima facie true and correct" (Ill. Rev. Stat. 1973, ch. 110, par. 274), but also the cases limit the permissible scope of our inquiry in situations of this type "to ascertaining if the agency decision was contrary to the manifest weight of the evidence." (*Basketfield v. Police Board of Chicago*, 56 Ill.2d 351, 358, 307 N.E.2d 371.) Thus, even assuming that the burden of proof rested upon claimants, we would be obliged to approve the ultimate finding of eligibility made by the Director which rested necessarily upon the basic premise that unemployment during the disputed period existed because of unavailability of work.

■■ This determination is dispositive of the case before us. We need not carry the matter further and decide theoretical questions as to whether an inference of refusal to work can be drawn with equal facility from a lockout as from a strike or whether an employer who institutes a

lockout is required preliminarily to recall his employees and offer them work. From the record before us it is factually certain that none of these claimants ever refused to work. All of them were originally laid off for lack of work. The only evidence on this subject matter was that the claimants were told by their union to go to work unless they were locked out. There is also testimony that claimants were willing to work whenever they would be recalled by their employer. No evidence to the contrary was offered by the plaintiff.

We conclude that each and all of these claimants are eligible to receive unemployment compensation for the entire period in dispute from April 10, 1970, to July 4, 1970. The judgment appealed from is therefore reversed and the cause remanded for the entry of a judgment affirming the amended decision of the Director, in effect awarding compensation to claimants as above set forth.

Judgment reversed and cause remanded.

BURKE and HALLETT, JJ., concur.