THE NESTLE COMPANY, INC., Plaintiff-Appellant, *v.* DONALD A. JOHNSON, Director of Labor, *et al.*, Defendants-Appellees.

Fifth District   No. 78-60

Opinion filed January 5, 1979.

Leo Konzen, of Lueders, Robertson & Konzen, of Granite City, and John F. Hertzog, of Nestle Enterprises, of White Plains, New York (Michael E. Kaemmerer, of Harris, Dowell, Fisher & McCarthy, of counsel), for appellant.

18

William J. Scott, Attorney General, of Chicago (Gail A. Moreland, Assistant Attorney General, of counsel), for appellee Donald A. Johnson.

Mr. JUSTICE KUNCE delivered the opinion of the court:

This is an appeal by the Nestle Company from an order of the Circuit Court of Madison County affirming a decision of the Director of Labor to grant unemployment benefits to certain of Nestle's employees for a period when they refused to cross picket lines maintained by members of another union which was on strike at Nestle's Granite City Plant.

Nestle contends that the administrative decision is based on a misinterpretation of a recent amendment to the Unemployment Compensation Act, and that the findings that the nonstriking union members were not participating in or directly interested in the labor dispute are contrary to the manifest weight of the evidence.

The pertinent facts are relatively simple and uncontroverted. At the time in question, about 170 employees at the plant were represented by the International Association of Machinists and Aerospace Workers, District 9, and about seven were represented by the International Union of Operating Engineers, Local 149. The two unions had separate contracts with the company, which had always been negotiated separately. It had been the past practice for the larger machinists union to negotiate and reach an agreement with the company before the smaller union began to negotiate. The evidence indicated that, at least in the three most recent contracts, the operating engineers had received the same economic package as the machinists.

On July 12, 1975, the company's current contracts with both unions expired. The machinists and the company had not been able to negotiate a new agreement, and just before noon on July 12 the company was informed that the machinists had voted to go out on strike. About noon picketing began. About the same time, the plant manager told the president of the operating engineers local that the company wanted his men to continue working. The operating engineers continued to work until 8 a.m. the next day, when they had completed an orderly shutdown of the plant, but then did not return to work until the machinists' strike was settled.

The uncontradicted evidence was that the only reason that the operating engineers did not return to work was the presence of the pickets. Union officials told the plant manager that they were afraid to cross the picket line. Although he had no personal knowledge of any threats, the union president, along with another union member, testified that fears of bodily harm and property damage deterred them from crossing the picket line. It was undisputed that the operating engineers offered on numerous occasions during the 15-week strike to go back to

work if the machinists would agree to their crossing the picket line, but all such requests were refused.

When members of the operating engineers union filed claims for unemployment insurance benefits, a claims adjudicator of the Division of Unemployment Insurance held that they were eligible. Nestle appealed, and a hearing was held before a representative of the Director of Labor, who reached the same conclusion. Nestle filed objections to the representative's recommendations, but the Director of Labor issued a decision upholding them. That decision was in turn affirmed by the circuit court on Nestle's complaint for administrative review. This appeal followed.

Both the claims adjudicator and the Director's representative relied on section 604 of the Unemployment Insurance Act in reaching their conclusions. That section provides in pertinent part:

> "An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute * * * This Section shall not apply if it is shown that * * * the individual is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work * * *; *provided, that * * * an individual's failure to cross a picket line * * * shall not, in itself, be deemed to be participation by him in the labor dispute.*" (Emphasis added.) Ill. Rev. Stat. 1977, ch. 48, par. 434.

As the Director's representative noted in his report to the Director of Labor, the proviso italicized above was added to the statute in 1975, and does not appear to have been previously construed. Decisional law prior to the amendment had established the rule that employees otherwise unconnected with a labor dispute who fail to cross a picket line of another labor organization because of their union principles (and not because of the reasonable fear of violence or bodily harm) are thereby participating in the dispute and thus ineligible for unemployment benefits. (See *Sangamo Electric Co. v. Donnelly*, 26 Ill. 2d 348, 186 N.E.2d 230 (1962), and cases discussed therein.) The Director's representative reviewed this line of cases, and authorities critical of the rule, in reaching the conclusion that the legislature intended by the amendment adding the proviso "to remove failure to cross a picket line as being an act of participation which would disqualify a non-striking worker."

On appeal, Nestle contends that this interpretation, adopted by the Director of Labor, is in error because it ignores the words "in itself." This misinterpretation, according to Nestle's argument, resulted in a failure "to examine the full question of participation in this case."

■■ We are not bound to give the same measure of deference to an administrative agency's construction of a statute that we give to its findings of fact. While we might affirm a factual conclusion as not against the manifest weight of the evidence though we would have reached the opposite conclusion, we cannot let stand a decision based upon an erroneous construction of a statute. *C.O. Baptista Films v. Cummins*, 9 Ill. 2d 259, 137 N.E.2d 393 (1956); *Chicago Magnesium Casting Co. v. Pollution Control Board*, 22 Ill. App. 3d 489, 317 N.E.2d 689 (1st Dist. 1974).

■■ In the instant case, we cannot but agree with Nestle that the legislature's use of the words "in itself" indicates the intent to require that an employer show more than *per se* evidence of failure to cross a picket line before a conclusion of participation can be made, and that participation may be shown by other evidence in a case where the failure to cross a picket line is also in evidence. We doubt, however, that the Director of Labor or his representative intended to hold, as Nestle suggests, that "where a refusal to cross a picket line is found, a conclusion of no participation must be made."

In any event, even if that were the agency's interpretation of the statute, it would be of no avail to Nestle in the instant case. We have examined the entire record and can find no competent evidence that the operating engineers participated in the machinists' strike. In fact, the record is uncontroverted that the operating engineers would have gone back to work had it not been for the pickets. The contention based on the supposedly erroneous construction of the statute must, therefore, be rejected.

■■ Nor can we find against the manifest weight of the evidence the conclusion that the operating engineers were neither engaged in a labor dispute with Nestle nor directly interested in the labor dispute between the machinists and Nestle. Though both the smaller union and the company had found it convenient to wait until the larger union achieved a contract before beginning their negotiations, and in the past the economic terms of both unions' contracts had been the same, the operating engineers had no enforceable right to the benefits obtained by the machinists. The mere expectancy of better economic terms in their own new contract upon conclusion of the machinists' strike did not give the operating engineers a direct interest in the machinists' labor dispute. (See *Shell Oil Co. v. Cummins*, 7 Ill. 2d 329, 131 N.E.2d 64 (1955).) At the most, this record reveals an indirect interest in the outcome of the machinists' strike; that is not sufficient for the denial of benefits. See *Outboard, Marine & Manufacturing Co. v. Gordon*, 403 Ill. 523, 87 N.E.2d 610 (1949).

For the foregoing reasons, we hold that the decision of the Director

of Labor that the members of the operating engineers union were entitled to unemployment compensation benefits was in accordance with the applicable law and not against the manifest weight of the evidence; the judgment of the Circuit Court of Madison County is therefore affirmed.

Affirmed.

EBERSPACHER and JONES, JJ., concur.