RUSSELL HALE, Plaintiff-Appellant, *v.* WALTER HELLSTROM, Chief of Police of the City of East Peoria, *et al.*, Defendants-Appellees.

Third District   No. 81-205

Opinion filed November 24, 1981.

Thomas F. McGuire, of Buffalo Grove, for appellant.

Robert V. Clevenger, of Pekin, and Carl F. Reardon & Associates, of East Peoria, for appellee Board of Fire and Police Commissioners of the City of East Peoria.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal is from a judgment of the Circuit Court of Tazewell County affirming upon administrative review the 10-day suspension of Sergeant Russell Hale by the Board of Fire and Police Commissioners of the City of East Peoria.

On June 1, 1980, Sergeant Hale and Patrolman Dennis Roese responded to a call of a reported shooting at a motel in East Peoria. They were the first officers at the scene. In room 66 they found the male victim bleeding profusely from a head wound and the victim's female companion. The officers were given a description of two suspects, which caused Hale to believe that a man and woman he had seen as he pulled up might be involved. Hale immediately left the scene in pursuit of the two suspects, and he succeeded in taking them into custody. After turning them over to other officers, he returned to the motel where he saw Julie Bill and Carrie Wilson, two police department female radio dispatchers, standing in the hall outside the room where the shooting had occurred. The dispatchers were just completing their duty shift when the call about the shooting came in, so they decided to go to the scene to see what was happening. The dispatchers were in uniform, and were employed by the city, not the police department.

According to Hale, his first thought was, "What in the heck are they doing here?" Then he thought one of the detectives at the station might have sent them to the scene since there were females involved in the crime. Hale testified that he just assumed the two dispatchers had a right to be there, and he did not, therefore, inquire as to their authority.

Shortly after Hale returned to the scene, the victim was removed and transported to a hospital in an ambulance accompanied by Officer Roese and by the victim's female companion. As Roese was leaving, he told the dispatchers, "You can probably go in after he [the victim] is out of here." Sergeant Hale remained in the room after the victim was removed, and he did not object or question the dispatchers when they came into the room. At one point he told Julie Bill not to touch anything, and at another time he asked her to turn on the air conditioning. (It was a warm humid evening.)

After an interval of time estimated variously as five to 20 minutes, Detective Paul Fisher arrived at the scene, and he became the ranking officer at the scene of the crime. Fisher told the dispatchers that they could leave, and they did so. A short time later the chief of police and the chief of detectives arrived at the scene and entered the room. According to the technicians who later checked out the scene of the crime, no evidence was contaminated by improper handling.

Hale was charged with intentionally allowing unauthorized personnel entrance to the crime scene in violation of two rules of the East Peoria

Police Department involving the procedures for dealing with crime scene evidence. Rule 106.02(6)(a) required officers called to the scene of a crime to take immediate steps to "apprehend the perpetrator, care for the injured, investigate the circumstances, obtain the names and addresses of the victims and witnesses, protect the area, and prevent the destruction, mutilation, concealment or contamination of physical evidence, call the detective bureau and such help as may be necessary." Rule 106.02(6)(e) stated that the "first officer at the scene of a serious crime shall exclude from the area all unauthorized persons and those who are not actually engaged in its investigation. Members of the department who are off duty or on duty but not assigned to the case shall not enter the premises or do any other thing that might interfere with the investigation or alter physical evidence in any respect, provided, however, that the officer in charge may assign such a member to immediate duty, when necessary."

The Board of Fire and Police Commissioners found Sergeant Hale guilty of the violations charged and imposed a 10-day suspension without pay. Hale filed a complaint for administrative review in the Circuit Court of Tazewell County, and following a hearing, the court entered a judgment affirming the decision of the Board.

The judgment order of the court recited that the Board found Hale "guilty of intentionally allowing unauthorized personnel entrance to a crime scene on June 1, 1980, in violation of rules and regulations promulgated by the East Peoria Police Department." The order also stated that the parties had previously stipulated that the error relied upon by Hale was that the decision of the Board was against the manifest weight of the evidence. The court then found that the decision was not against the manifest weight of the evidence. This appeal followed.

Before this court, Hale's primary contention is that, considering the stress of the situation, his failure to ascertain whether the uniformed dispatchers had been authorized to visit the scene of the crime was not substantial misconduct as would justify a suspension.

The applicable standard for suspension was discussed in *Zinser v. Board of Fire & Police Commissioners* (1961), 28 Ill. App. 2d 435, 172 N.E.2d 33, where the court said:

> "A broad discretion is accorded the Board of Fire and Police Commissioners in determining what constitutes a proper cause for suspension, but it is essential to the validity of such suspension that it shall be based upon substantial misconduct or incapacity. Disobedience of a proper order given by a superior officer is such misconduct." 28 Ill. App. 2d 435, 439, 172 N.E.2d 33, 34-35.

In other words minor misconduct or technical violations of rules should not be the basis for a suspension from duty, but rather should be corrected by means of a reprimand or other "in house" discipline.

Both the Board and the police chief in the case before us answer that Hale's misconduct was substantial and could have resulted in a contamination of evidence which might have prevented the prosecution of the perpetrators of a violent crime. They assert the importance of a police department enforcing the rules designed to protect the chain of evidence. Finally, they insist that the Board's decision was not contrary to the manifest weight of the evidence.

In a case where an officer was suspended for sleeping on duty, the reviewing court held that, if there is no dispute as to the facts, then the question is solely one of law and is reviewable by the court; however, if the evidence is conflicting or if credibility is involved, then the administrative agency's decision cannot be disturbed unless it is contrary to the manifest weight of the evidence. *Pryka v. Board of Fire & Police Commissioners* (1978), 67 Ill. App. 3d 10, 384 N.E.2d 872.

Hale testified that he knew it was his duty to keep unauthorized persons from the scene, that he did not inquire as to the dispatchers' authority to be present, and that he did not authorize them to be present. He argues that he assumed they were authorized, that he knew they had been at the scenes of other crimes, that he did prevent contamination of the evidence which was his primary duty, and that he in fact pressed one of the dispatchers into service when he asked her to turn on the air conditioner. We do not find the latter point to be very significant, but what is significant is that Hale *could* have requested the dispatchers to assist him at the scene. He was alone in a motel room containing contraband, blood, and, for all he knew, other material evidence. He had just chased on foot and captured two suspects and then returned to supervise the removal of the wounded victim and his companion from the room. The other officer with him left in the ambulance. Events were moving swiftly, and Hale could hardly be expected to cross-examine every person in a police uniform who appeared when he was responsible for protecting the area and for investigating the scene for possible additional evidence. At oral argument before this court, counsel for the Board admitted that Hale would not have been guilty of any violation of the rules if he had asked the dispatchers for their assistance.

We can only conclude that a rule violation based upon the fact that Hale failed to ask for assistance, but instead accepted it without question, was not such "substantial misconduct" as to justify a suspension in this case. Furthermore, we believe the evidence does not indicate an *intentional* violation of the rules but rather, at the most, an inadvertent failure to say the appropriate words authorizing the dispatchers to help him with his duties at the scene. Accordingly, we hold that the Board and the trial court erred.

By so holding, we do not intend to condone violations of police department rules or to prevent a board of police and fire commissioners

from disciplining officers who engage in conduct which seriously impairs the functioning of the department. What we do hold is that the misconduct in this case was not substantial and did not support a suspension. Accordingly, we reverse the judgment of the trial court.

Reversed.

SCOTT, P. J., and HEIPLE, J., concur.