LOCAL 7-641, OIL, CHEMICAL & ATOMIC WORKERS INTERNATIONAL UNION, AFL-CIO, *et al.*, Plaintiffs-Appellants, *v.* THE DEPARTMENT OF LABOR *et al.*, Defendants-Appellees.

First District (5th Division)    No. 81-1057

Opinion filed April 23, 1982.

Arnold S. Rosenberg and Barbara J. Hillman, both of Cornfield and Feldman, of Chicago, for appellants.

Tyrone C. Fahner, Attorney General, of Chicago (Michael T. Prousis, Assistant Attorney General, of counsel), for appellee Department of Labor.

Lawrence I. Kipperman and Paul F. McCarthy, both of Sidley & Austin, of Chicago, for appellee Velsicol Chemical Corporation.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiffs appeal from an order on administrative review affirming a decision of the Director of Labor finding them ineligible for benefits under section 604 of the Illinois Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1979, ch. 48, par. 434).

The facts are largely undisputed. Individual plaintiffs included laboratory, maintenance, and production employees of defendant Velsicol Chemical Corporation (Velsicol) who were members of plaintiff Locals 7-641 and 7-641A, Oil, Chemical & Atomic Workers International Union (Union) and were covered by collective bargaining agreements expiring on December 6, 1977. Negotiations for a new contract began prior to that date and, while the parties reached an understanding as to certain terms,

they were unable to complete the contract. The Union offered to continue work after December 6 under an interim arrangement to include the new terms already agreed upon and those terms of the old contract which were still in dispute. Velsicol rejected this proposal and, in making its own final offer, informed the Union that if the offer was not acceptable the employees could continue working after December 6 under interim terms concerning which the parties have different versions.

After the Union rejected Velsicol's final offer and its interim terms for continued work, plaintiff employees failed to report for work from December 7, 1977, through April 8, 1978, and pickets were set up. This resulted in a work stoppage and, eventually, salaried personnel from other plants were brought in to restore production. During the work stoppage, 94 individual plaintiffs applied for unemployment benefits, and a claims adjudicator determined that under section 604 of the Act they were ineligible for benefits.

The individual plaintiffs appealed, and a mass appeal was also filed by the Union on behalf of the nonmanagement employees. After a hearing, a representative of the Director of Labor recommended that the employees be found ineligible for benefits, and the employees filed objections thereto asserting that there had been a "constructive lockout." Eventually, the Director of Labor affirmed the determination of the claims adjudicator and held that plaintiffs were ineligible for benefits. On administrative review, the circuit court affirmed the decision of the Director of Labor, and this appeal followed.

OPINION

We are presented with the question of whether plaintiffs are entitled to unemployment benefits under section 604 of the Act, which provides in relevant part:

"An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed. * * * This Section shall not apply if it is shown that (A) the individual is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work and (B) he does not belong to a grade or class of workers of which immediately before the commencement of the stoppage there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; *provided, that a lock-out by the employer or an individual's failure to cross a picket line at such factory, establishment, or other premises shall not, in itself, be*

*deemed to be participation by him in the labor dispute.* (Emphasis added.) Ill. Rev. Stat. 1979, ch. 48, par. 434.

Plaintiffs contend they are entitled to benefits because they were constructively locked out from their employment and thus came within the lockout exception amendment to section 604 of the Act (the portion italicized above is that amendment).

■■ Initially, we note that while plaintiffs assert that the decision of the Director of Labor was against the manifest weight of the evidence, the relevant facts here which concern the question as to whether a lockout includes a "constructive lockout" are not disputed and, by reason thereof, their legal effect becomes a matter of law. *Kensington Steel Corp. v. Industrial Com.* (1944), 385 Ill. 504, 53 N.E.2d 395; *Schoenbein v. Board of Trustees* (1965), 65 Ill. App. 2d 379, 212 N.E.2d 380.

We note also that the term "labor dispute," as used in section 604, includes a strike as well as a lockout and is defined as "any controversy concerning wages, hours, working conditions or terms of employment" (*Buchholz v. Cummins* (1955), 6 Ill. 2d 382, 387, 128 N.E.2d 900, 903); that a "strike" has been defined as a cessation of work by employees in an effort to get for themselves more favorable terms (*Bankston Creek Collieries v. Gordon* (1948), 399 Ill. 291, 77 N.E.2d 670); and that the word "lockout" is characterized in *Be-Mac Transport Co. v. Grabiec* (1974), 20 Ill. App. 3d 345, 314 N.E.2d 242, as a suspension of operations by an employer resulting from a dispute with employees over wages, hours, or working conditions, or the ceasing to furnish work for employees in order to obtain more favorable terms for the employer.

It is the position of plaintiffs here that, in addition to its literal meaning of a plant closing by an employer, the term "lockout" as used in the amendment should be construed to include a "constructive lockout"—described as a situation where employees refuse to work following the termination of a work contract because the terms offered by the employer to continue working are substantially different from the status quo. Plaintiffs maintain also that the interim working terms offered by Velsicol were so materially different from those in their terminated work agreement that they were constructively locked out and, by reason thereof, should have been found eligible for benefits.

Plaintiffs concede that prior to the amendment claimants who were unemployed due to a lockout were not eligible for benefits unless there was a showing under section 604(A) and (B) that the claimants did not participate in, or finance, or have a direct interest in the labor dispute. (See *Be-Mac Transport Co. v. Grabiec* (1974), 20 Ill. App. 3d 345, 314 N.E.2d 242.) They maintain, however, that the amendment authorizes payment of benefits to locked out employees and, suggesting that the amendment was substantially adopted from statutes of other States which

have judicially recognized the concept of constructive lockout, they argue a presumption that the Illinois legislature intended to adopt those interpretations and thus that we should hold the term "lockout" in the amendment includes a constructive lockout.

■■ We are unpersuaded by this argument for several reasons. First, because it appears to be based upon a faulty major premise; namely, that the amendment authorizes payments to all claimants who are unemployed because of a lockout regardless of participation in a labor dispute. It is our belief that the legislature did not so intend. Second, because such a construction would be contrary to the policy behind the enactment of the Act, which was to provide economic security and relieve the hardship caused by involuntary unemployment. (Ill. Rev. Stat. 1979, ch. 48, par. 300; *Fash v. Gordon* (1947), 398 Ill. 210, 75 N.E.2d 294; or, as stated in *Shell Oil Co. v. Cummins* (1955), 7 Ill. 2d 329, 339, 131 N.E.2d 64, 69, "to provide sustenance to those who are unemployed through no fault of their own and who are willing, anxious, and ready to work if given the opportunity.") Third, the language of the amendment, rather than expressly excluding lockouts from the labor dispute disqualification provision, provides only that a lockout "shall not, in itself" be deemed to be participation by an employee in the labor dispute. We think that the phrase "in itself" is significant and, by its insertion, that the legislature intended that an employee is not disqualified by the mere fact of a lockout, as he would have been before the amendment, but that he would be entitled to benefits unless participation in the labor dispute is shown by additional evidence. Thus, while before the amendment a locked-out employee was ineligible for benefits unless he was able to show that he did not participate in, finance, or was not directly interested in the labor dispute, under the amendment a locked-out employee would be eligible unless it was shown that he was in fact a participant in the labor dispute.

We believe this reading of the amendment is consistent with the interpretation given it in *Nestle Co. v. Johnson* (1979), 68 Ill. App. 3d 17, 385 N.E.2d 793. There, in considering the provision in the amendment that "an individual's failure to cross the picket line * * *, shall, not, in itself, be deemed to be participation by him in a labor dispute," the court expressed doubt that the quoted language was intended to require that a conclusion of no participation must be made where claimants refused to cross a picket line, and it held that "the legislature's use of the words 'in itself' indicates the intent to require that an employer show more than *per se* evidence of failure to cross a picket line before a conclusion of participation can be made, and that participation may be shown by other evidence in a case where the failure to cross a picket line is also in evidence." 68 Ill. App. 3d 17, 20, 385 N.E.2d 793, 795-96.

Moreover, we find little merit in plaintiffs' contention that the Illinois

legislature is presumed to have recognized a constructive lockout because the amendment was modeled after statutes of other States which have adopted such a concept. The instant case is unlike those cited by plaintiffs. In two of them—*People v. Beckers* (1952), 413 Ill. 102, 108 N.E.2d 5, and *Cook v. Dove* (1965), 32 Ill. 2d 109, 203 N.E.2d 892—the Illinois Inheritance Tax Act was clearly modeled after the New York act and, in the third—*People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 6/97—the interpretations given provisions of the Uniform Narcotics Drug Act by three other jurisdictions were considered persuasive where that Act had also been adopted by those other States.

We are unable to find in the legislative history any indication that the amendment was based on the lockout language of any other State statute, and plaintiffs have failed to cite any authorities to substantiate their contention. Furthermore, the lockout language within the statutes of each of five States; namely, Connecticut (Conn. Gen. Stat. Ann. sec. 31—236(3) (West 1972)), Ohio (Ohio Rev. Code Ann. sec. 4141.29 (D)(1)(A) (Anderson 1980)), Kentucky (Ky. Rev. Stat. Ann. sec. 341.360(1) (1977)), Pennsylvania (Pa. Stat. Ann. tit. 43, sec. 802(d) (Purdon 1964)) and West Virginia (W. Va. Code sec. 21A—6—3(4) (1981)), where the concept of constructive lockout has been applied (see Annot., 62 A.L.R.3d 437, 456-59 (1975)), differs from the lockout language in the Illinois statute. In Connecticut and West Virginia, the legislature has codified the constructive lockout principle and, unlike Illinois, in all five of those States lockouts are expressly excluded from the disqualification provision in the statute.

■■ Because we believe that the legislature did not intend to automatically qualify locked-out employees for benefits under the amendment regardless of their participation in the labor dispute, we see no basis for a holding that a constructive lockout would do so, even were we to recognize the concept. In view thereof, we find it unnecessary to consider the other issue raised—whether under the facts here plaintiffs were constructively locked out.

For the reasons stated, we find that the decision of the Director of Labor that plaintiffs were ineligible for benefits under section 604 as amended was proper, and accordingly we affirm the judgment of the circuit court.

Affirmed.

MEJDA and WILSON, JJ., concur.