JAMES CALLAHAN, Plaintiff-Appellee, v. THE DEPARTMENT OF STATE POLICE, Defendant-Appellant.

First District (4th Division) No. 1—90—0525

Opinion filed December 19, 1991.

JIGANTI, P.J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for appellant.

Eugene G. Callahan, Matthew W. LaKoma, and Robert J. Metts, all of Callahan, Fitzpatrick, LaKoma & McGlynn, of Oak Brook, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Defendant, the Illinois Department of State Police (Department), appeals from the order of the circuit court reversing the decision of the Illinois State Police Merit Board (Board) that plaintiff, Special Agent James Callahan, had violated the Department's rule proscribing insubordination by disobeying a lawful order of a superior. The Department contends that the trial court erred in reversing the decision

of the Board because the decision was not against the manifest weight of the evidence presented at the administrative hearing.

In November 1986, Callahan was charged with violating certain paragraphs of the Department's Rules of Conduct, including paragraph 1—4, Insubordination, which states in relevant part:

"Officers shall promptly obey any lawful orders of a superior."

Callahan denied the charges, and a hearing was held before an administrative hearing officer. Although the record is voluminous, the facts are relatively uncomplicated and largely undisputed.

In August 1984, Callahan was involved in an automobile accident while on duty. As a result of the collision, he was hospitalized for a period of time and was off from work for a total of approximately six to seven weeks. This time off was compensated as service-connected sick leave, which is designated by the Department as "512" time, in contrast to "515" time, which refers to personal, non-service-related sick time. The "512" time category derives from the Continuing Compensation Act (Ill. Rev. Stat. 1983, ch. 70, par. 91), which allows up to one year of full compensation to State law enforcement officers who are injured in the line of duty, and from the Illinois Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*), which also provides for disability payments to employees injured in the course of their work.

In July 1985, Callahan was examined by Dr. Proctor Anderson, an orthopedic physician associated with the Department. Dr. Anderson prepared a report in which he stated his opinion that Callahan did not require further treatment at that time. Following review of the report by Master Sergeant Donald Burgess, the supervisor of the medical records section, Burgess recommended to James Zagel, then-Director of the Department, that Callahan's workers' compensation benefits, including additional "512" time and treatment expenses relating to the 1984 injury, be discontinued. On July 31, 1985, the following letter, which is the subject of this case, was sent to Callahan:

"Dear Special Agent Callahan:
RE: Service-Connected Injury
D/A 8/31/84
Our Case No. 11—84—N—260

On July 15, 1985, you were examined by Proctor Anderson M.D. at our request regarding the injuries sustained in the above-captioned case. Based on Dr. Anderson's report, your workers' compensation benefits including additional service-con-

nected time off and any treatment expense will be discontinued effective August 1, 1985.

If you have any questions, please contact Master Sergeant Don Burgess at 217/782/4453.

> Very truly yours,
> James B. Zagel
> Director."

This letter is a standard form letter sent to all officers whose "512" time is being discontinued.

On June 3, 1986, Callahan called his supervisor, Lieutenant Michael Sliozis, and informed him that he, Callahan, was having problems with his back and was undergoing treatment from Dr. James Phelps, a chiropractor. Callahan returned to work on June 23. There was some conflicting testimony concerning whether Rita Klein, the business manager, approached Callahan or Callahan approached Klein regarding whether the time off was to be designated as "512" or "515" time. It was agreed, however, that Callahan informed Klein that his doctor believed that his back problems were related to the 1984 injury, and that Callahan caused the 21 days off in June, which had been originally recorded in the computer as "515" time, to be re-designated by Klein as "512" time under the case number of his 1984 injury. Changes in the designation of time off are not unusual, and all time records are reviewed monthly.

In mid-July 1986, a summary of Callahan's 1986 time off was prepared by Sliozis at the direction of one of Sliozis' superiors. Sliozis then met with Callahan to discuss the change from "515" to "512" time for his June sick days. Sliozis advised Callahan that he would have to submit to an examination by a "state doctor" and also provide a letter from his own doctor, both of which Callahan agreed to do.

On July 22, after learning of the letter of July 31, 1985, discontinuing "512" time for the 1984 injury, Sliozis met again with Callahan and questioned him regarding the "512" designation for the June 1986 sick days. Callahan acknowledged receiving the letter, but stated that it was his belief that Department policy allowed the taking of additional "512" time under the case number of the original injury if that injury recurred. He informed Sliozis that his doctor believed that his then-current back problems were related to the 1984 injury, and that he had consulted with his attorney before causing the days off in June to be changed from "515" to "512" time. Sliozis informed Callahan that Major Charles Doerr had directed him to have Callahan's

time off in June changed from "512" time to other time-off categories. Callahan stated that he disagreed with Doerr's decision but would not contest it pending examination by Dr. Anderson and a Department review of his medical records. On July 29, the Department received a letter from Dr. Phelps stating that he had been treating Callahan for back problems and that in his opinion those problems were related to the 1984 accident. On August 15, 1986, after an examination by Dr. Anderson and a review of Callahan's medical records, Sliozis sent a memorandum directing the timekeeper to change the time taken by Callahan in June 1986 from "512" to other time-off categories.

It is undisputed that the Department had no written rule governing the procedure to be followed for reactivating "512" time for medical problems arising from an earlier injury. Major Charles Doerr testified, however, that the proper procedure in these circumstances would have been for Callahan to submit a memorandum to the Director's office through the chain of command together with medical documentation supporting his request for reconsideration of the 1985 discontinuance of "512" time for the original injury. Sergeant Burgess testified that although it is not unusual for the Department to allow additional "512" time for the reoccurrence of a previous work-related injury, Callahan should have contacted him or someone on his staff in the medical records section and submitted documentation of his claim prior to changing or causing to have changed the designation of his time off from "515" to "512" time.

Following a disciplinary meeting in October 1986, Callahan was suspended for 15 days for insubordination and other alleged violations of Department rules. Upon administrative review, the hearing officer issued his "Findings of Fact and Conclusions of Law" in which he stated that the letter of July 31, 1985, "amounted to a lawful order from a superior," and that Callahan's changing of the designation of his time off in June 1986 from "515" to "512" without authorization constituted insubordination in violation of paragraph 1–4 of the Department rules. The hearing officer also concluded, however, that the Department had failed to sustain its burden of proof on two other charges filed against Callahan. The Police Merit Board accepted the hearing officer's findings of fact and conclusions of law and reduced Callahan's suspension from 15 to 5 days for insubordination. The circuit court reversed the decision of the Board, ruling that the letter of July 31, 1985, was not an order. This appeal followed.

OPINION

The Department contends that the trial court erred in reversing the Board's decision that Callahan's conduct constituted insubordination. The Department argues that it is well settled that an administrative agency's findings on questions of fact are considered *prima facie* true and correct (Ill. Rev. Stat. 1987, ch. 110, par. 3—110) and that those findings should not be disturbed on review unless they are contrary to the manifest weight of the evidence (*Garland v. Department of Labor* (1984), 104 Ill. 2d 383, 472 N.E.2d 434). A finding is against the manifest weight of the evidence if an opposite conclusion is clearly evident from the record. (*Sheehan v. Board of Fire & Police Commissioners* (1987), 158 Ill. App. 3d 275, 509 N.E.2d 467.) The Department maintains that the findings of the hearing officer were not against the manifest weight of the evidence and that the Board's decision must, therefore, be upheld.

■ However, it is also well settled that the manifest weight of the evidence standard of review does not apply where the question presented is one of law. (*Kankakee County Board of Review v. Property Tax Appeal Board* (1989), 131 Ill. 2d 1, 544 N.E.2d 762; *Lake County Board of Review v. Property Tax Appeal Board* (1989), 192 Ill. App. 3d 613, 548 N.E.2d 1129.) When the facts are not in dispute, their legal effect becomes a matter of law which is reviewable by the court, and a reviewing court is not bound by an agency's conclusions of law. *Kensington Steel Corp. v. Industrial Comm'n* (1944), 385 Ill. 504, 53 N.E.2d 395; *Local 7-641 v. Department of Labor* (1982), 106 Ill. App. 3d 476, 435 N.E.2d 1192; *Hale v. Hellstrom* (1981), 101 Ill. App. 3d 1127, 428 N.E.2d 1197.

■ In the instant case, the trial court found that the hearing officer's conclusion that the July 1985 letter "amounted to" an order which Callahan disobeyed by claiming additional "512" medical leave in June 1986 was incorrect as a matter of law. We agree with the trial court's ruling.

The trial court in the case at bar noted that the word "order" is defined in Black's Law Dictionary as "[a] mandate; precept; command or direction authoritatively given; rule or regulation." (Black's Law Dictionary 988 (5th ed. 1979).) The letter at issue was a standard form letter sent to all officers upon the termination of service-connected injury benefits. Contrary to the Department's argument that it "directed [Callahan] not to use any more '512' time with regard to the 1984 accident," the letter contains no mandate, command or direction to Callahan to do or refrain from doing any act. It simply informed Callahan that his workers' compensation

benefits, including service-connected time off attributable to injuries sustained in the 1984 accident, were being discontinued. It then advised him to contact Burgess in the medical records section *if* he had any questions.

Relying on *Zisner v. Board of Fire & Police Commissioners* (1961), 28 Ill. App. 2d 435, 172 N.E.2d 33, the Department nevertheless argues that "although the *** letter *** did not contain the language of a formal order," its clear import was that Callahan "was not to take any more '512' *** time off with regard to his 1984 accident." We cannot agree.

*Zisner* involved a notice, signed by the assistant fire chief at the direction of the hospitalized fire chief, and posted in the city's firehouses which read:

> "All off duty men are to report to [a local auditorium on a specified date.]
>
> A refresher class as a follow up of the regional officer school will be conducted.
>
> Coffee and donuts will be provided again in the auditorium."

Nineteen members of the fire department who failed to attend the refresher course were suspended for insubordination. Although the court opined that the notice "did not appear in the language of a formal order," seemingly because of the reference to refreshments, the court nonetheless found that the notice constituted an order which the firefighters were obliged to obey.

In the case *sub judice,* the Department's reliance on *Zisner* is clearly misplaced. The *Zisner* case language, "[a]ll off duty men are to report," is a clear and definite directive. The letter in the instant case contains no command or directive. It does not, as the Department argues, tell Callahan that "he was not to take any more 512 time." Rather, the letter merely informed him that the Department was discontinuing the benefits it had been giving to Callahan for the injuries attributable to the 1984 accident.

The written findings of the hearing officer suggest to us that his finding of insubordination was based on Callahan's change of the classification of his time from "515" to "512" sick leave "without authorization" and "contrary to proper procedure." However, it has been conceded that there was no written policy concerning the procedure to be followed for seeking additional "512" time following its earlier discontinuance. Further, witnesses differed as to what they understood to be the proper, *albeit* unwritten, policy governing this situation. Doerr testified that Callahan should have sent

a memo and medical documentation to the Director's office; Burgess testified that such information should have been submitted to his office.

However, Callahan was not charged with failing to follow proper procedure. He was charged with insubordination for failing to obey a lawful order of a superior. Since we hold, as a matter of law, that the letter did not constitute a lawful order, it necessarily follows that the decision of the Board finding that Callahan was insubordinate for violating a lawful order was erroneous.

For the reason stated, the order of the trial court reversing the decision of the Board is affirmed.

Affirmed.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

I respectfully dissent from the opinion of the majority because I believe that it was within the province of the Board to determine whether the plaintiff's conduct amounted to a violation of the Department's rule prohibiting insubordination.

The plaintiff was sent a letter informing him that his service-connected time off relating to an injury which occurred in 1984 was being discontinued as of August 1, 1985. The letter contained the name of a person the plaintiff could contact if he had any questions. Ten months later, without informing anyone, the plaintiff took additional service-connected time off relating to that injury. As a result, he was suspended for violating the Department's rule against insubordination, which provides that "officers should promptly obey any lawful orders of a superior." The majority examined the language of the letter and concluded that as a matter of law it did not constitute an order.

It is true, as the majority asserts, that a reviewing court is not bound by an agency's conclusion of law. However, administrative agencies are afforded substantial discretion by a reviewing court in construing and applying their own rules, and a court will interfere only where the agency's interpretation is plainly erroneous. (*Illinois Bell Telephone Co. v. Human Rights Comm'n* (1989), 190 Ill. App. 3d 1036, 1047, 547 N.E.2d 499; *Scheffki v. Board of Fire & Police Commissioners* (1974), 23 Ill. App. 3d 971, 973, 320 N.E.2d 371.) In the context of disciplinary action taken by a police department, deference is accorded the agency because, as a part of the executive

branch of government, it has both the responsibility and expertise in matters relating to the enforcement of standards which concern the maintenance of discipline and morale within the department. (*Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 489, 378 N.E.2d 1160.) A reviewing court's only obligation is to determine whether the agency's interpretation of its own rules has a reasonable basis in law. *Taylor*, 62 Ill. App. 3d 486, 376 N.E.2d 1160.

In the case at bar, I believe that it was within the Board's power to determine whether the plaintiff's conduct violated the rule prohibiting insubordination. As was stated in *Zinser v. Board of Fire & Police Commissioners* (1961), 28 Ill. App. 2d 435, 439, 172 N.E.2d 33, the absence of formal language is not in itself determinative of whether a particular communication constitutes an order. The need for discipline and obedience is inherent in the operation of a paramilitary organization such as the Illinois Department of State Police. (*Phillips v. Hall* (1983), 113 Ill. App. 3d 409, 419, 447 N.E.2d 418.) In light of that need, I believe that the Board should be accorded great deference in setting standards of acceptable conduct for Department personnel. In my view, the conclusion of the Board that the plaintiff's conduct constituted insubordination has a reasonable basis in law and should not be overturned.